## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| _____ | ) | |
| B.P. BUFORD, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 09-121L |
| | ) | Honorable Loren A. Smith |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | (Electronically Filed |
| | ) | December 6, 2010) |
| Defendant. | ) | |
| _____ | ) | |

---

### DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
### -AND-
### DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON LIABILITY

---

IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division

JOSHUA A. DOAN
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O Box 663
Washington, DC 20044-0663
Tel: (202) 305-0874
Fax: (202) 305-0506
Email: joshua.doan@usdoj.gov

Counsel for Defendant

December 6, 2010

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

_____
                                    )
B.P. BUFORD, et al.,                )
                                    )
        Plaintiffs,                 )
    v.                              )       No. 09-121L
                                    )       Honorable Loren A. Smith
                                    )
THE UNITED STATES OF AMERICA,       )       (Electronically Filed
                                    )        December 6, 2010)
        Defendant.                  )
_____)

**DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendant, the United States of America, hereby respectfully cross-moves for summary

judgment pursuant to Rule 56 of the Court of Federal Claims on Plaintiffs' Fifth Amendment

takings claims, and opposes Plaintiffs' Motion for Partial Summary Judgment on Liability filed

on November 5, 2010 [Dkt. 31] and the Memorandum in Support thereof [Dkt. 32].

Plaintiffs own land in Warren County, Mississippi that allegedly abuts or is traversed by

a railroad right-of-way formerly owned by the Kansas City Southern Railway Company.

Plaintiffs contend that they have a reversionary interest in the subject right-of-way, and that this

interest has been taken as a result of the Surface Transportation Board's issuance of a Notice of

Interim Trail Use under section 8(d) of the National Trails System Act, 16 U.S.C. § 1247(d),

authorizing the railroad to negotiate an agreement to preserve the right-of-way for possible future

active rail use while allowing interim use of the railroad right-of-way as a public trail.

A memorandum in support of the United States' cross-motion, as well as in opposition to

Plaintiffs' motion, follows.  As explained in that memorandum, the United States is entitled to

summary judgment on the issue of liability, and Plaintiffs are not.  Plaintiffs have not met their burden of demonstrating that their respective parcels abut segments of the subject right-of-way in which the railroad held only an easement.  Furthermore, even if Plaintiffs had met that burden, they cannot demonstrate that railbanking and interim trail use exceed the scope of such an easement under Mississippi law.  As a result, Plaintiffs cannot show that the United States has taken any property interest belonging to them.

For these reasons, as discussed in greater detail in the memorandum that follows, the United States respectfully requests that this Court deny Plaintiffs' motion for summary judgment on liability and grant the United States' cross-motion.

## TABLE OF CONTENTS

STATEMENT OF LEGAL ISSUES ........................................................................... vi

I.   INTRODUCTION ........................................................................ 1

II.  STATUTORY BACKGROUND:  THE TRAILS ACT ....................................... 3

III. FACTUAL BACKGROUND ............................................................ 6

IV.  STANDARD FOR SUMMARY JUDGMENT .............................................. 9

V.   ARGUMENT ............................................................................ 11

    A.   Plaintiffs Have Not Met Their Burden of Establishing That Their Respective Properties Abut Segments of The Railroad Right-of-Way in Which the Railroad Allegedly Held Only an Easement. ....................................................... 11

    B.   Those Plaintiffs Whose Respective Properties Allegedly Abut Segments of the Railroad Right-of-Way Acquired Through the Barnes and Pace Deeds Cannot Prove a Fifth Amendment Taking Because Those Deeds Conveyed Fee Title. ............................................................................. 14

    C.   Seven Plaintiffs Cannot Prove a Fifth Amendment Taking for the Additional Reason that Their Respective Properties Do Not Abut the Railroad Right-of-Way Because a Street Separates Their Properties from the Right-of-Way. ......... 20

    D.   Even if Plaintiffs Could Demonstrate That Their Respective Properties  Abut Segments of the Right-of-Way in Which the Railroad Held Only an Easement, Both Railbanking and Interim Trail Use Are Within the Scope of that Easement. ................................................................ 22

VI.  CONCLUSION ............................................................................ 28

# TABLE OF AUTHORITIES

## CASES

Air Pegasus of D.C., Inc. v. United States,
    424 F.3d 1206 (Fed. Cir. 2005).........................................................................................11

Ala. & Vicksburg R.R. Co. v. Mashburn,
    109 So. 2d 533 (Miss. 1959).................................................................15, 16, 17, 19, 25

Amaliksen v. United States,
    55 Fed. Cl. 167 (2003) .........................................................................................................11

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986).........................................................................................................9, 10

Berry v. Southern Pine Electric Power Ass'n,
    76 So. 2d 212 (Miss. 1954).............................................................................................27

Birt v. STB,
    90 F.3d 580 (D.C. Cir. 1996) ..........................................................................................3, 5

Caldwell v. United States,
    57 Fed. Cl. 193 (2003), aff'd, 391 F.3d 1226 (Fed. Cir. 2004)............................................4

Caldwell v. United States,
    391 F.3d 1226 (Fed. Cir. 2004)........................................................................................4, 5

Capital Electric Power Ass'n v. Hinson,
    84 So. 2d 409 (1956)..........................................................................................................23

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)..............................................................................................10, 11, 13

Chevy Chase Land Co. v. United States,
    733 A.2d 1055 (Ct. App. Md. 1999).............................................................................25, 26

Chic. & N.W. Transp. Co. v. Kalo Brick & Tile Co.,
    450 U.S. 311 (1981).............................................................................................................3

Cienega Gardens v. United States,
    331 F.3d 1319 (Fed. Cir. 2003)..........................................................................................11

Citizens Against Rails-To-Trails ("CART") v. STB,
    267 F.3d 1144 (D.C. Cir. 2001) .........................................................................................5

City of Canton v. Canton Cotton Warehouse Co.,
    36 So. 266 (Miss. 1904) ...................................................................................25

City of Womack v. West Point,
    174 So. 241 (Miss. 1937) ..........................................................................24, 25

Colorado v. United States,
    271 U.S. 153 (1926) .........................................................................................3

Columbus & Greenville Railway. Co. v. Dunn,
    185 So. 583 (Miss. 1939) .................................................................................25

Crum v. Butler,
    601 So. 2d 834 (Miss. 1992) ..............................................................15, 17, 18

Dossett v. New Orleans Great Northern Railroad Co.,
    295 So.2d 771, (Miss. 1974) .............................................................................18

Goos v. ICC,
    911 F.2d 1283 (8th Cir. 1990) ............................................................................5

Hayfield N. R.R. v. Chic. & N.W. Transp. Co.,
    467 U.S. 622 (1984) ......................................................................................3, 5

Johnson v. IVAC Corp.,
    885 F.2d 1574 (Fed. Cir. 1989) .........................................................................13

Jones v. City of Hattiesburg,
    42 So. 2d 717 (Miss. 1949) ..............................................................................24

Jones v. New Orleans & Ne. R.R. Co.,
    59 So. 2d 541 (Miss. 1952) ..............................................................................12

Kesler v. United States,
    25 Cl. Ct. 189 (1992) ..................................................................................10, 13

King County v. Rasmussen,
    299 F.3d 1077 (9th Cir. 2002), cert. denied, 538 U.S. 1057 (2003) ..................14

Kynerd v. Hulen,
    5 F.2d 160 (5th Cir. 1925) ...............................................................................19

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986) ........................................................................................10

Miss. Cent. R.R. Co. v. Ratcliff,
    59 So. 2d 311 (Miss. 1952)............................................................................15, 16, 17, 19

Moody v. Allegheny Valley Land Trust,
    976 A.2d 484 (Pa. 2009) ............................................................................25, 26

Moore v. United States,
    58 Fed. Cl. 134 (2003) ............................................................................11

Nat'l Ass'n of Reversionary Prop. Owners ("NARPO") v. STB,
    158 F.3d 135 (D.C. Cir. 1998) ............................................................................3

National Wildlife Federation v. ICC,
    850 F.2d 694 (D.C. Cir. 1988) ............................................................................4-5, 14

Neb. Trails Council v. STB,
    120 F.3d 901 (8th Cir. 1997) ............................................................................4

New Orleans and Northeastern Railroad Co. v. Morrison,
    35 So. 2d 68 (Miss. 1948)............................................................................19, 21, 25

Panhandle Oil Co. v. Trigg,
    114 So. 625 (Miss. 1927)............................................................................21

Preseault v. ICC,
    494 U.S. 1 (1990)............................................................................1, 3, 5

Preseault v. United States,
    100 F.3d 1525 (Fed. Cir. 1996)............................................................................1, 14

RLTD Ry. Corp. v. STB,
    166 F.3d 808 (6th Cir. 1999) ............................................................................3

Ryan v. Mississippi Valley & Ship Island Railroad Co.,
    62 Miss. 162, 1884 WL 3428 (Miss. 1884) ............................................................................23

Schneider v. United States,
    2003 WL 25711838 (D. Neb. Aug. 29, 2003) ............................................................................26, 27

Schneider v. United States,
    2008 WL 2953550 (D. Neb. July 29, 2008) ............................................................................26

Stowers v. Postal Telegraph-Cable Co.,
    9 So. 356 (Miss. 1891)............................................................................27

United States v. Harrison County,
   265 F. Supp. 76 (S.D. Miss. 1967), rev'd on other grounds, United States v.
   Harrison County, 399 F.2d 485 (5th Cir. 1968)...................................................................23

Weir v. Standard Oil Co.,
   101 So. 290 (Miss. 1990).............................................................................................24, 25

## STATUTES

16 U.S.C. § 1247.........................................................................................................................1

49 U.S.C. § 10502..................................................................................................................4, 8

49 U.S.C. § 10903...............................................................................................................4, 8, 9

Transportation Act of 1920 (41 Stat. 477-78)............................................................................3

## RULES AND REGULATIONS

49 C.F.R. § 1152.29...............................................................................................................4, 5

49 C.F.R. §§ 1152.50-1152.60....................................................................................................4

RCFC 56...............................................................................................................................9, 10

Mississippi Rule of Appellate Procedure 20.............................................................................22

**STATEMENT OF LEGAL ISSUES**

1. Have Plaintiffs met their burden of establishing an ownership interest in the subject railroad right-of-way?

2. For any segment of the railroad right-of-way in which the railroad held an easement (rather than fee simple title), are railbanking and interim trail use within the scope of such easements?

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS CROSS-MOTION FOR
SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT ON LIABILITY**

## I.   INTRODUCTION

Plaintiffs allege that they own fee simple title to certain land underlying a railroad right-

of-way located in Warren County, Mississippi.  See Plaintiffs' Fourth Amended Complaint

("Pls.' Fourth Am. Compl.") [Dkt. 30] ¶ 4.  Plaintiffs contend that an easement that allegedly

burdened their respective properties was extinguished by operation of Mississippi law when the

Surface Transportation Board (the "STB") issued a Notice of Interim Trail Use ("NITU") on

June 16, 2008.  See id. ¶¶ 24-28.  The NITU permitted the "railbanking" of the subject right-of-

way for future rail use and interim trail use pursuant to the National Trails System Act, 16 U.S.C.

§ 1247(d) (the "Trails Act").  See id.  Plaintiffs argue that the STB's issuance of the NITU

effected a taking of their alleged respective interests in the land underlying the right-of-way.  See

id.  On November 5, 2010, Plaintiffs filed a Motion for Summary Judgment on Liability [Dkt.

31], a Memorandum in Support [Dkt. 32] ("Pls.' Memo."), and Proposed Findings of

Uncontroverted Fact [Dkt. 33].

Plaintiffs' motion rests upon a two-step argument.  First, Plaintiffs argue that they own

the land underlying segments of the subject railroad right-of-way by virtue of something called a

center-line presumption, which applies in Mississippi.  See, e.g., Pls.' Memo. at 11.[1]  Under the

center-line presumption, the fee owner of property abutting a railroad (or other) easement is

---

[1] As the United States Supreme Court has explained, ownership interests must be carefully
analyzed under the relevant state law.  See Preseault v. ICC, 494 U.S. 1, 16 (1990).  And the
Federal Circuit has noted that an examination of property interests in rails-to-trails cases requires
a "close examination" of the conveying instruments, read in light of the common law and the
statutes of the applicable state.  Preseault v. United States, 100 F.3d 1525, 1534 (Fed. Cir. 1996)
(en banc) ("Ideally that question would be decided by the State of Vermont's courts, utilizing
their knowledge of and experience with their state's property law.").

presumed to own fee title to the land underlying the easement to its center.  (A center-line presumption does not apply to any segment of a railroad right-of-way that the railroad owned in fee simple; the presumption applies only to segments in which the railroad held an easement.)  Second, Plaintiffs contend that under Mississippi law, railbanking and interim trail use exceed the scope of the easement held by the railroad.  Id. at 21-30.

Plaintiffs' two-step argument fails and, accordingly, their summary judgment motion should be denied, and the United States' cross-motion should be granted.  As an initial matter, Plaintiffs have not met their burden of proving that they own segments of the right-of-way in which the railroad held only an easement because they have pointed to nothing in the record showing how the railroad acquired the segments of the right-of-way that their respective properties abut.  Instead, Plaintiffs assert that the resolution of this issue is "subject to precise professional mapping or . . . stipulation."  Id. at 12 n.3.  Furthermore, with the exception of those segments that were acquired by adverse possession, the railroad did not hold a mere easement in the railroad right-of-way.  Instead, the two 1872 deeds that Plaintiffs contend are at issue conveyed fee title to the railroad, and any properties abutting segments that the railroad owned in fee are not entitled to a center-line presumption.  Moreover, even if those 1872 deeds had conveyed only an easement, several Plaintiffs have not demonstrated that they own land abutting the right-of-way because a street separates their properties from the right-of-way, and they have not proved that they own the land underlying the entire intervening street.  Finally, under Mississippi law, railbanking and interim trail use are within the scope of the railroad's easement.  Thus, even if Plaintiffs had demonstrated which segments of the right-of-way their properties allegedly abut, and even if the railroad held only an easement in those segments, Plaintiffs' Fifth Amendment takings claims must fail.

II.      STATUTORY BACKGROUND:  THE TRAILS ACT

Stemming from the Interstate Commerce Act of 1887, as amended and revised, and the

Transportation Act of 1920 (41 Stat. 477-78) and subsequent statutes, the STB has exclusive and

plenary authority over the construction, operation and abandonment of virtually all of the

nation's rail lines.  Chic. & N.W. Transp. Co.  v. Kalo Brick & Tile Co., 450 U.S. 311, 311-12

(1981); see also RLTD Ry. Corp. v. STB, 166 F.3d 808, 810-11 (6th Cir. 1999) (general

discussion of the history of railroad regulation).  Consequently, a railroad cannot be relieved of

its legal obligation to offer service on a particular rail line without first obtaining the express

consent of the STB.  See Colorado v. United States, 271 U.S. 153, 167 (1926); Nat'l Ass'n of

Reversionary Prop. Owners ("NARPO") v. STB, 158 F.3d 135, 137 (D.C. Cir. 1998).

The termination of active rail service by a railroad generally occurs in one of three ways.

First, a railroad can apply for permission to discontinue service.  This authority allows the

railroad to decide "to cease operating a line for an indefinite period while preserving the rail

corridor for possible reactivation of service in the future."  Preseault v. ICC, 494 U.S. 1, 6 n.3

(1990); see also NARPO, 158 F.3d at 137 n.1 ("A line that is no longer in use, but has not been

officially abandoned, may be reactivated later and is termed 'discontinued.'").

Second, a railroad may seek permission to terminate its service over a right-of-way

through an abandonment proceeding.  If authority to abandon is granted by the STB, and the

railroad "consummates" the abandonment, the rail line is removed from the national

transportation system and the STB's jurisdiction generally comes to an end.  Hayfield N. R.R. v.

Chic. & N.W. Transp. Co., 467 U.S. 622, 633 (1984); Preseault, 494 U.S. at 6 n.3; Birt v. STB,

90 F.3d 580, 585 (D.C. Cir. 1996).

The third option available to railroads seeking to terminate active rail service is known as

railbanking.  Railbanking is a form of discontinuance in that the railroad right-of-way is

preserved for future use.  See Neb. Trails Council v. STB, 120 F.3d 901, 903 n.1 (8th Cir. 1997)

("'Railbanking' refers to the preservation of railroad corridor for future rail use."); Caldwell v.

United States, 57 Fed. Cl. 193, 194 (2003) (under the railbanking process, "[t]he right-of-way is

'banked' until such future time as railroad service is restored"), aff'd, 391 F.3d 1226 (Fed. Cir.

2004).  The difference between railbanking and a standard discontinuance is that (1) a third party

accepts full responsibility for the corridor while active rail service is suspended, and (2) this third

party may allow interim trail use of the corridor until active rail service is restored.

In order for a railroad corridor or right-of-way to be railbanked, the railroad must initiate

the regulatory process for abandonment of its rail line by filing an abandonment application

under 49 U.S.C. § 10903, a Notice of Exemption, or a Petition for Exemption from that process

under 49 U.S.C. § 10502 (previously 49 U.S.C. § 10505) and 49 C.F.R. §§ 1152.50-1152.60.[2]

Caldwell v. United States, 391 F.3d 1226, 1228 (Fed. Cir. 2004); see also 49 C.F.R. § 1152.29.

Once a railroad requests authorization to abandon a rail line through the filing of a Notice of

Exemption, a party interested in acquiring or using the right-of-way for railbanking and interim

trail use may then request the issuance of a notice of interim trail use or "NITU."  49 C.F.R. §

1152.29(c)-(d).  The STB's regulations require a qualified party interested in "acquiring or

using" a right-of-way for railbanking and interim trail use to file a request or petition that

includes, among other things, a statement of willingness to assume responsibility for the right-of-

way, and an acknowledgment that interim trail use of the right-of-way is subject to the "possible

future reconstruction and reactivation of the right-of-way for rail service" (i.e., railbanking).  49

C.F.R. § 1152.29(a)(1)–(3).  Interim trail use is voluntary, see National Wildlife Federation v.

---

[2] In this case, the Kansas City Southern Railway Company and the Vicksburg Southern Railroad,
Inc. jointly petitioned for exemptions from the provisions of 49 U.S.C. § 10903.  See Def.'s
Proposed Findings of Uncontroverted Fact ("Def.'s PFOF") ¶ 15; see also Ex. A to Pls.'
Proposed Findings of Uncontroverted Fact at 3.

ICC, 850 F.2d 694, 702 (D.C. Cir. 1988), but if the railroad indicates that it is willing to negotiate a railbanking agreement, the STB must issue a NITU.  Citizens Against Rails-To-Trails ("CART") v. STB, 267 F.3d 1144, 1150-53 (D.C. Cir. 2001).

A NITU will "permit the railroad to discontinue service, cancel any applicable tariffs, and salvage track and materials, consistent with interim trail use and rail banking[.]" 49 C.F.R. § 1152.29(d)(1).  In addition, a NITU authorizes negotiations, for a 180-day period, of a railbanking and interim trail use agreement.  Id.  If no such agreement is reached within the 180-day period, and the negotiating period is not extended at the request of the parties, then the NITU permits the railroad to fully abandon the rail line at issue, "subject to appropriate conditions, including labor protection and environmental matters."  Id.  If the railroad exercises the authority and consummates abandonment of the rail line, that line is removed from the national transportation system and the STB's jurisdiction generally comes to an end.  Hayfield N. R.R. Co., 467 U.S. at 633; Preseault, 494 U.S. at 6 n.3.  If, instead, a railbanking and interim trail use agreement is reached, the NITU automatically authorizes the interim trail use, and the trail sponsor may then assume management of the right-of-way, subject only to the right of a railroad to restore active rail service.  49 C.F.R. § 1152.29(d)(2); see also Goos v. ICC, 911 F.2d 1283, 1295 (8th Cir. 1990); Birt, 90 F.3d at 583.  The STB's jurisdiction over the rail line is preserved when this occurs.  Caldwell, 391 F.3d at 1229-30.

### III.    FACTUAL BACKGROUND

The railroad right-of-way at issue here is 4.25 miles long and located in Warren County,

Mississippi, largely within the city limits of Vicksburg.  See Fourth Am. Compl. ¶ 4.  The

railroad line (the "Line") on the subject right-of-way extended from Milepost 225.6 (south of the

Line's crossing of Warrenton Road and the intersection with Kemp Bottom Road) to Milepost

229.85 (approximately 0.05 miles south of the Line's crossing of Glass Road, just beyond the

Vicksburg city limits).  See Def.'s PFOF ¶ 3; see also Ex. A to Pls.' Proposed Findings of

Uncontroverted Fact at 3.  The Line was sometimes referred to alternatively as the Vicksburg

Industrial Lead, South Redwood Branch, or Redwood Branch.  See Def.'s PFOF ¶ 2; see also Ex.

A to Pls.' Proposed Findings of Uncontroverted Fact at 3.  Most recently, the Line was owned by

the Kansas City Southern Railway Company ("KCSR") and leased to Vicksburg Southern

Railroad, Inc. ("VSOR"), which provided common carrier services.  See Def.'s PFOF ¶ 4; see

also Ex. A to Pls.' Proposed Findings of Uncontroverted Fact at 4-5.

Predecessors-in-interest to KCSR and VSOR began acquiring the railroad right-of-way in

the 1870s through various means, including purchase, condemnation, adverse possession, and

court decree.  See Def.'s PFOF ¶ 5; see also Ex. A to Def.'s PFOF.  The earliest of these

predecessors-in-interest was the Vicksburg, Pensacola, and Ship Island Railroad Company,

which was created by the Mississippi legislature through its passage of "AN ACT entitled an Act

to incorporate the Vicksburg, Pensacola, and Ship Island Railroad Company," dated March 21,

1871.  See Def.'s PFOF ¶ 6; see also Ex. B to Def.'s PFOF.

The Mississippi legislature authorized the Vicksburg, Pensacola, and Ship Island

Railroad Company "to have and to hold real and personal property for the objects, purposes and

business of said corporation . . . ."  Def.'s PFOF ¶ 7; see also Ex. B to Def.'s PFOF at 2 (sec. 2).

The railroad also was authorized by the Mississippi legislature to acquire, by purchase or other means, and to own and possess, any real and personal estate:

> [T]he said corporation is hereby authorized to take and receive by grant, bequest or gift, and to own and possess any real and personal estate that may be devised or given to it by or from any person or persons, corporation or association, and to obtain by purchase, and to own and possess any real and personal estate that may be necessary and convenient for the construction, maintenance, and management of said railroad, whether such real and personal estate may be situate or may be granted, devised, given, or obtained by purchase, within the limits of the State of Mississippi or elsewhere; . . .

Def.'s PFOF ¶ 8; see also Ex. B to Def.'s PFOF at 5 (sec. 3).

The Mississippi legislature also authorized the Vicksburg, Pensacola, and Ship Island Railroad Company:

> to lay out their said railroad within the State of Mississippi, not exceeding two hundred feet wide, upon any lands within said state, and to take and possess the same, and for the purposes of necessary turn-outs, depots, cuttings and embankments, and for obtaining stone, gravel, timber, and other materials for the construction and maintenance of said railroad, to take and possess as much more land as may be necessary for the construction, maintenance and security of said railroad: . . .

Def.'s PFOF ¶ 9; see also Ex. B to Def.'s PFOF at 5 (sec. 3).

Segments of the subject railroad right-of-way were acquired by the Vicksburg, Pensacola, and Ship Island Railroad Company through deeds from Louisa Barnes, on June 19, 1872, and from Elijah H. Pace and Rosana J. Pace, on June 21, 1872.  See Def.'s PFOF ¶ 11; see also Exs. F and G to Pls.' Proposed Findings of Undisputed Fact.  The operative language of the Barnes deed and the Pace deed is identical.  Those deeds contain three grants in two different sentences. The first sentence included two grants of rights and privileges to the railroad:

> the party of the first part has granted, bargained and sold And by these Presents does now grant, bargain and sell, unto the said party of the second part, under and by virtue of the Charter incorporating said Railroad Company entitled "An Act to incorporate the Vicksburg Pensacola and Ship Island Railroad Company," which said act and Charter became a law on the 21st day of March, AD 1871, the right

7

and privilege to build and construct the said Railroad, with all its works, bed, ties, iron, embankments, and excavations, in and upon following described and mentioned tracts, pieces and parcels of land, lying and being in the County of Warren, State of Mississippi, to wit: [description by section, township, and range, along with acreage contained therein] and also the right and privilege forever hereafter to use, enjoy, manage and employ, control and direct the use of said Railroad works, beds, ties, iron, embankments, and excavations on said land and premises aforesaid free from any let, hindrance or obstruction.

Def.'s PFOF ¶ 12; see also Exs. F and G to Pls.' Proposed Findings of Undisputed Fact.

The second granting sentence conveyed land to the railroad, and it included a habendum clause:

And for and in consideration of the premises, the party of the first part, grants, bargains, and sells unto the said party of the second part, all that certain tract, piece, or parcel of land, upon and apart of the land and premises hereinbefore described, to wit: a strip of land One Hundred feet wide, running through said land and premises, according to the survey and plat of said Railroad, which said survey and plat of said Railroad, as the same surveys and plats the line of said road through said land and premises aforesaid, is hereby especially referred to, as a part of the deed, for a more full and accurate description of the said strip of land aforesaid, One Hundred feet wide as aforesaid, hereby conveyed; and also: to have and to hold the same in fee simple, unto the said party of the second part, according to the terms and conditions of said Charter aforesaid.

Id. (emphasis added).[3]

On August 24, 2007, KCSR and VSOR jointly petitioned the STB under 49 U.S.C. § 10502 for exemptions from the provisions of 49 U.S.C. § 10903 to allow KCSR to abandon, and VSOR to discontinue service over, the Line.  See Def.'s PFOF ¶ 15; see also Ex. A to Pls.' Proposed Findings of Uncontroverted Fact at 3.  On September 26, 2007, the City of Vicksburg asked the STB to issue a NITU under the Trails Act authorizing the City to negotiate with KCSR during a 180-day period for railbanking and interim recreational trail use of the subject railroad right-of-way.  See Def.'s PFOF ¶ 16; see also Ex. C to Pls.' Proposed Findings of

---

[3] Other portions of the railroad right-of-way were conveyed by deeds from the Vicksburg Realty Company, dated September 14, 1916, and from Jim Gaines and Lizzie Gaines dated September 28, 1916.  See Def.'s PFOF ¶ 13; see also Exs. C & D to Def.'s PFOF.

Uncontroverted Fact at 3.  KCSR expressed its willingness to negotiate with the City.  See Def.'s PFOF ¶ 16; see also Ex. D to Pls.' Proposed Findings of Uncontroverted Fact at 2 n.3.

On June 16, 2008, the STB issued a NITU authorizing interim trail use and railbanking subject both to the future restoration of rail service and to the City's continuing to meet the financial obligations of the railroad right-of-way.  See Def.'s PFOF ¶ 17; see also Ex. D to Pls.' Proposed Findings of Uncontroverted Fact at 3.  On September 5, 2008, KCSR notified the STB that on August 27, 2008, it had concluded with the City an agreement for interim trail use and railbanking, and that it had conveyed the Line to the City.  See Def.'s PFOF ¶ 18.  The conveyance was pursuant to the NITU and the Trails Act.  See id.; see also Ex. E to Pls.' Proposed Findings of Uncontroverted Fact at 2.  For example, under the terms of the Trail Use Agreement which was executed in conjunction with the conveyance of the Line, the City agreed that if the reactivation of rail service on the Line were deemed necessary or desirable, it would transfer the Line if required to do so by the Trails Act and an appropriate decision by the STB.  See Def.'s PFOF ¶ 19; see also Ex. E to Pls.' Proposed Findings of Uncontroverted Fact at 5.

## IV.    STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  RCFC 56(c)(1).  The rule continues, "[i]n considering such a motion, the court will, absent persuasive reason to the contrary, deem the material facts claimed and adequately supported by the moving party to be established, . . ."  Id. A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Alternatively, summary judgment is appropriate "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322; accord Kesler v. United States, 25 Cl. Ct. 189, 195 (1992) ("the party bearing the burden of proof at trial must produce the evidence from which a finder of fact could reasonably find in its favor on the merits of the case" (citing Anderson, 477 U.S. at 254-55)).  As the Supreme Court has explained, "[i]n such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex Corp., 477 U.S. at 322-23.

Once the moving party meets its initial burden, the non-moving party "may not rely merely on allegations or denials in its own pleading."  RCFC 56(e)(2).  Instead, where the moving party's initial burden is met, the non-moving party, through affidavits or as otherwise provided in RCFC 56, must set forth specific facts showing a genuine issue for trial.  Celotex Corp., 477 U.S. at 324 (applying Fed. R. Civ. P. 56).  In evaluating motions for summary judgment, courts must view any inferences drawn from the underlying facts in the light most favorable to the non-moving party and may not engage in credibility determinations or weigh the evidence.  Anderson, 477 U.S. at 255; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

V.     **ARGUMENT**

A.     **Plaintiffs Have Not Met Their Burden of Establishing That Their Respective Properties Abut Segments of The Railroad Right-of-Way in Which the Railroad Allegedly Held Only an Easement.**

In order to establish a taking, Plaintiffs bear the burden of proving that they owned the property alleged to have been taken from them on the date of the alleged taking. See Cienega Gardens v. United States, 331 F.3d 1319, 1328 (Fed. Cir. 2003) ("For any Fifth Amendment takings claim, the complaining party must show it owned a distinct property interest at the time it was allegedly taken."); Amaliksen v. United States, 55 Fed. Cl. 167, 171 (2003) ("Establishing title to the property allegedly taken is essential in asserting a taking."). This is a threshold issue in all takings claims, and a court does not reach the question whether a taking occurred "without first identifying a cognizable property interest." Air Pegasus of D.C., Inc. v. United States, 424 F.3d 1206, 1213 (Fed. Cir. 2005). If a Plaintiff is unable to prove that he or she has an ownership interest in the land underlying the subject railroad right-of-way, the court should dismiss his or her claim. See, e.g., Moore v. United States, 58 Fed. Cl. 134, 138-39 (2003) (granting summary judgment in favor of defendant as to certain plaintiffs who failed to establish that they owned fee title to land underlying the subject railroad easement). Because proof of ownership is an essential element of Plaintiffs' Fifth Amendment takings claims, the United States is entitled to summary judgment if Plaintiffs cannot cite evidentiary support in the record showing that they owned fee title to the land underlying segments of the railroad right-of-way. See Celotex Corp., 477 U.S. at 322-23.

In most cases alleging a taking of land, a plaintiff establishes ownership of that land by producing deeds or other documentation concerning title to the land allegedly taken. Here, Plaintiffs have moved for summary judgment without producing such evidence. Instead, as discussed above, Plaintiffs are attempting to meet their burden of proving title by establishing

11

that they own a parcel of land that abuts the subject right-of-way and then invoking a center-line presumption to prove ownership of land underlying the right-of-way.  Pls.' Memo at 11. Plaintiffs' invocation of this legal presumption as a short-cut for establishing their title should be rejected on two grounds.   First, under Mississippi law, the center-line presumption only applies if the respective properties abut segments of the right-of-way in which the railroad held an easement rather than fee simple title.  See, e.g., Jones v. New Orleans & Ne. R.R. Co., 59 So.2d 541, 544 (Miss. 1952) ("conveyances of land bordering on a railroad easement carried title in fee to the center line of the easement as to sub-surface minerals, and also reversionary rights to the surface, in the absence of a clear statement of intention to the contrary" (emphasis added)). Second, application of the center-line presumption would be improper here because, with one exception, the property owners on both sides of the subject right-of-way are not plaintiffs.

Here, Plaintiffs contend that they abut segments of the railroad right-of-way in which the railroad held only an easement because the railroad allegedly acquired those segments through adverse possession or through two 1872 deeds that purportedly conveyed only an easement to the railroad.[4]   As set forth below in Part V.B, Plaintiffs' predecessors-in-interest conveyed fee simple title to the railroad by these two 1872 deeds.  The center-line presumption cannot be invoked by Plaintiffs to reacquire an interest in these lands.

But even if Plaintiffs could prove that the railroad held only an easement in certain segments of the railroad right-of-way, Plaintiffs have not met their burden of showing, based on materials in the record, that their properties abut those particular segments.  Plaintiffs merely assert, in their Motion for Partial Summary Judgment, Memorandum in Support, and Proposed Findings of Uncontroverted Fact, that proof of ownership of properties abutting segments in

---

[4] The United States does not dispute that under Mississippi law, the railroad held only an easement in any segments of the right-of-way that it acquired by adverse possession.

which the railroad held an easement is "subject to precise professional mapping or . . . stipulation." Dkt. 31 at 2; Dkt. 32 at 12 n.3; Dkt. 33 at 3-4.  The record, however, contains no such "precise professional mapping."  Instead, Plaintiffs point only to a chart, prepared by their counsel, making assertions about how the railroad acquired the segments of the right-of-way allegedly abutting Plaintiffs' respective properties.  See, e.g., Pls.' Proposed Findings of Uncontroverted Fact, at ¶ 18 and Ex. K thereto.

A finder of fact could not rely upon assertions by Plaintiffs' counsel to find that Plaintiffs' properties abut segments of the right-of-way in which the railroad held an easement. See, e.g., Johnson v. IVAC Corp., 885 F.2d 1574, 1581 (Fed. Cir. 1989) ("Attorneys' argument is no substitute for evidence.").  Nor could a finder of fact rely upon "precise professional mapping" that is not a part of the record.  As a result, Plaintiffs have not made their requisite threshold showing that their properties adjoin portions of the right-of-way in which the railroad allegedly held only an easement, and this Court should deny Plaintiffs' motion for summary judgment and enter summary judgment in favor of the United States. See, e.g., Celotex Corp., 477 U.S. at 322-23; Kesler, 25 Cl. Ct. at 195.

Furthermore, even if the railroad holds only an easement to certain segments of the subject right-of-way, and even if Plaintiffs had shown that they abut such segments, the center-line presumption should not be applied without a determination as to whether the deeds in the chains-of-title for the properties on both sides of the right-of-way are ambiguous in terms of who holds the fee subject to such an easement.   Plaintiffs are asking the Court to blindly apply the center-line presumption without any consideration of whether the landowners who abut on the other side of the right-of-way (with one exception, non-parties to this action) might own the fee underlying the entire right-of-way.   In other words, this is not a case in which landowners on

13

opposite sides of a right-of-way seek a determination of who holds fee title to the land

underlying the right-of-way, with all potentially interested parties participating in the litigation.

Under these circumstances, Plaintiffs should be required to produce chains-of-title to

demonstrate that a center-line presumption is appropriate.  Because they have not done so,

summary judgment should be granted in favor of the United States, and denied to Plaintiffs, for

this reason as well.

> **B.     Those Plaintiffs Whose Respective Properties Allegedly Abut Segments of the Railroad Right-of-Way Acquired Through the Barnes and Pace Deeds Cannot Prove a Fifth Amendment Taking Because Those Deeds Conveyed Fee Title.**

Plaintiffs' takings claims are premised on the allegation that the railroad held only an

easement in the subject right-of-way and that they are the fee owners of the lands subject to that

easement.  However, if the railroad "obtained fee simple title to the land over which it was to

operate . . . the [abutting landowners] today would have no right or interest in those parcels and

could have no claim related to those parcels for a taking."  Preseault v. United States, 100 F.3d

1525, 1533 (Fed. Cir. 1996); see also King County v. Rasmussen, 299 F.3d 1077, 1088-89 (9th

Cir. 2002) (affirming dismissal of rail-trail takings claims where railroad held fee simple title to

the right-of-way), cert. denied, 538 U.S. 1057 (2003); Nat'l Wildlife Fed'n, 850 F.2d at 703

(rights-of-way held by the railroad in fee simple interests "are not affected by the takings clause

aspect of this case"). [5]

The question whether the railroad acquired the fee or an easement in the subject right-of-

way is a question of Mississippi state law.  Here, the railroad acquired its interest in a portion of

---

[5] The arguments in Part V.B of this memorandum do not apply to any Plaintiff whose property abuts segments of the railroad right-of-way that the railroad acquired by adverse possession. Plaintiffs allege that J&K Land Company, Dee, and Headley own property abutting segments of the railroad right-of-way that the railroad acquired through adverse possession.

the right-of-way by deeds from Louisa Barnes ("Barnes deed") and from Elijah and Rosana Pace ("Pace deed"), both executed in 1872.  As set forth below, under Mississippi law, both of these deeds conveyed a fee simple interest in land to the railroad.   Therefore, Plaintiffs whose properties allegedly abut segments of the railroad right-of-way acquired through the Barnes and Pace deeds cannot prove a Fifth Amendment takings claim.

Under Mississippi law, "[i]nstruments that specifically refer to a strip, parcel, or tract of land have been held to convey a fee."  Crum v. Butler, 601 So.2d 834, 838 (Miss. 1992) (citing Ala. & Vicksburg R.R. Co. v. Mashburn, 109 So.2d 533 (Miss. 1959); Miss. Cent. R.R. Co. v. Ratcliff, 59 So.2d 311 (Miss. 1952)).

In Mashburn, the Mississippi Supreme Court held that the deed at issue conveyed fee title to a railroad.  109 So.2d at 537.  Under the terms of the Mashburn deed, the grantors "released, relinquished, and sold" to the railroad and its "successors forever, all that portion of our tract of land . . . which is or may be necessary or useful to the said Company in the construction, use, and preservation of the Rail Road. . . ."  Id. at 534 (emphasis added).  The deed further stated that "the route [of the railroad], according to the located survey of the Engineer, . . . runs through [the grantors'] said land."  Id.  In overruling the lower court, which had held that the deed conveyed only an easement, the Mississippi Supreme Court observed that the Mississippi legislature had authorized the railroad to acquire property in fee simple and that the deed conveyed "'land.'"  Id. at 536.  The court rejected the argument that only an easement had been conveyed because of the deed's use of the phrase "'which is or may be necessary or useful to the said [c]ompany in the construction, use, and preservation of the Rail Road,'" stating that such language referred "to the use to which the granted right-of-way would be put and to the quantity of the land necessary for that purpose – not to the quality of the estate conveyed."  Id.  The court also noted, in this regard,

15

that "the deed states that the survey of the engineer had been made (although the metes and bounds the engineer had established were omitted from the deed)."  Id. [6]

In Ratcliff, the Mississippi Supreme Court construed a deed in which the grantor conveyed to a railroad "'seven pieces or parcels of land, . . . '"  59 So.2d at 312 (emphasis added).  For each parcel, the Ratcliff deed recited a metes and bounds description, followed by the language "'[t]he above described tract or right of way containing [some number of] acres, more or less.'"  Id. at 312-13.  The metes-and-bounds description of some of the parcels included the language "a strip of land 100 feet wide, fifty feet either side of the present located center line of the Natchez & Eastern Railway."  Id. at 312.  The court held that the deed granted fee title and rejected the argument that the reference to a "right of way" in the recital clause could defeat the conveyance of a fee estate.  Id. at 314-15.  In doing so, the court noted that under a Mississippi statute in effect when the deed was executed, a railroad corporation was expressly authorized "'to hold and enjoy real estate necessary for its purposes, in fee-simple or otherwise,'"  id. at 315, and that the deed was in the form of a general warranty deed, id. at 314.

As in Mashburn and Ratcliff, the Barnes and Pace deeds expressly conveyed "land."  The Barnes and Pace deeds granted a "certain tract, piece, or parcel of land," namely "a strip of land One Hundred Feet wide, . . ."  Def.'s PFOF ¶ 12; see also Exs. F and G to Pls.' Proposed Findings of Undisputed Fact.  As in Mashburn, the Barnes and Pace deeds do not contain a metes-and-bounds description of the land conveyed, and instead refer to a survey prepared by the railroad to specify what land was being conveyed.  See Def.'s PFOF ¶ 12; see also Exs. F and G to Pls.' Proposed Findings of Undisputed Fact.  And as with the grantee railroads in Mashburn

_____

[6] The court also observed that the nominal consideration of $1.00 recited in the deed should not be given great weight in determining the estate conveyed, in part because "the benefit to the property owner resulting from construction and operation of the Railroad might have been the true consideration for the execution of the deed."  Mashburn, 109 So.2d at 536.

and <u>Ratcliff</u>, the Mississippi legislature authorized the Vicksburg, Pensacola, and Ship Island Railroad Company to own property in fee simple and did not limit the railroad to acquiring only an easement on which to operate its Line.  The statute establishing the railroad authorized it to "to own and possess <u>any real and personal estate</u> that may be devised or given to it . . . , and to obtain by purchase, and to own and possess <u>any real and personal estate</u> that may be necessary and convenient for the construction, maintenance, and management of [the] railroad."  <u>See</u> Def.'s PFOF ¶ 8 (emphasis added); <u>see also</u> Ex. B to Def.'s PFOF at 5 (sec. 3) (emphasis added). Therefore, a Mississippi court would hold, in accordance with the rule set forth by the Mississippi Supreme Court's opinions in <u>Crum</u>, <u>Mashburn</u>, and <u>Ratcliff</u>, that the Barnes and Pace deeds conveyed a fee estate to the railroad.

Furthermore, the granting language in the Barnes and Pace deeds was followed by a habendum clause, which reads, "and also: to have and to hold the same in fee simple, unto the said party of the second part according to the terms and conditions of [the] Charter aforesaid." Def.'s PFOF ¶ 12; <u>see also</u> Exs. F and G to Pls.' Proposed Findings of Undisputed Fact.[7] Because this clause immediately follows the conveyance of "a strip of land" rather than the conveyance of a "right and privilege," the phrase "the same" in the habendum is most naturally read as referring to the "strip of land" conveyed rather than the rights and privileges conveyed earlier in the deeds. To hold that a railroad received only an easement through a deed conveying a "strip of land . . . in fee simple" would be contrary to the intent of the parties to the Barnes and

---

[7] The deeds in <u>Mashburn</u> and <u>Ratcliff</u> were held to convey a fee simple estate despite lacking a habendum similar to that contained in the Barnes and Pace deeds.

Pace deeds, and therefore contrary to Mississippi law.  See, e.g., Crum, 601 So.2d at 837 ("the intent of the parties expressed in the language they used must govern"). [8]

Plaintiffs' argument that the Barnes and Pace deeds are ambiguous and should be construed in Plaintiffs' favor is misplaced.  Pls.' Memo. at 16-17.  To be sure, the Barnes and Pace deeds conveyed certain rights and privileges to the railroad in addition to conveying a strip of land in fee simple.  But in the Mississippi case cited by Plaintiffs involving an ambiguous conveyance to a railroad, the ambiguity was created by a single grant within a deed; separate grants within the same deed were not at issue, as they are here.  In Crum v. Butler, which Plaintiffs cite, Pls.'s Memo. at 16, one of the deeds construed by the Mississippi Supreme Court conveyed "for Right of Way, a strip of land 100 feet wide" (and the other, earlier deed conveyed only "a right of way One Hundred Feet wide through the lands belonging to said parties of the first part" without expressly conveying a "strip of land").  601 So.2d at 836-38.  The grant was ambiguous under Mississippi law because "[w]here the instrument specifically conveys a right of way, then the deed will be construed as intending to convey only an easement, while "[i]nstruments that specifically refer to a strip, parcel, or tract of land have been held to convey a fee."  Id. at 838.  Similarly, Dossett v. New Orleans Great Northern Railroad Co., 295 So.2d 771, (Miss. 1974), which the court considered and distinguished in Crum, involved a deed granting to the railroad "a strip of land for a right of way."  Id. at 775.  In short, Crum and Dossett do not

---

[8] In arguing that the "in fee simple" habendum can be read as referring to the grant of an easement, Pls.' Memo. at 16, Plaintiffs also overlook the fact that the language granting a right and privilege earlier in the Barnes and Pace deeds contains a separate habendum.  Specifically, the Barnes and Pace deeds granted to the railroad "the right and privilege forever hereafter to use, enjoy, manage and employ, control and direct the use of said Railroad works, beds, ties, iron, embankments, and excavations on said land and premises aforesaid free from any let, hindrance or obstruction."  Def.'s PFOF ¶ 12 (emphasis added); see also Exs. F and G to Pls.' Proposed Findings of Undisputed Fact (emphasis added).

suggest that the grant of a "strip of land . . . in fee simple" in the Pace and Barnes deeds is

ambiguous because that grant contains no mention of a "right of way." [9]

Nor does <u>New Orleans and Northeastern Railroad Co. v. Morrison</u>, 35 So.2d 68, 70

(Miss. 1948), which Plaintiffs cite for the proposition that "in Mississippi . . . 'where an

easement will satisfy the purpose of the grant a fee will not be included in the grant unless

expressly provided,'" Pls. Memo. at 17, apply here.  As discussed above, the Barnes and Pace

deeds expressly granted "a strip of land one hundred feet wide," and this granting language was

followed immediately by a habendum clause providing that the railroad was "to have and to hold

the same in fee simple."  Def.'s PFOF ¶ 12; <u>see also</u> Exs. F and G to Pls.' Proposed Findings of

Undisputed Fact.  The deed construed by the Mississippi Supreme Court in <u>Morrison</u> was quite

different.  Rather than conveying "a strip of land" that the railroad was "to have and to hold . . .

in fee simple" the deed at issue in that case conveyed only "a right of way for 200 feet," 35 So.2d

at 69, and it contained a habendum clause including a "'covenant to warrant,'" <u>id.</u> at 70.

<u>Morrison</u>, therefore, is inapposite here.  <u>See, e.g.</u>, <u>Mashburn</u>, 109 So.2d at 536 (noting that

<u>Morrison</u> could be "readily distinguished" because the deed in <u>Morrison</u> "did not convey land

but conveyed only a right of passage through land, - a 'floating easement'").

---

[9] Plaintiffs' citation of <u>Ratcliff</u> for the proposition that "a clear grant of rights supersedes all
other contrary terms," Pls.' Memo. at 16, is especially curious.  In <u>Ratcliff</u>, the Mississippi
Supreme Court not only agreed with the appellant that the deed at issue conveyed a fee simple
estate, 59 So.2d at 314, it also stated, "[i]f the language of the deed could be said to be
ambiguous or uncertain as to the estate intended to be conveyed, it would follow under well-
recognized rules of construction that it should be construed to pass <u>a fee rather than a lesser
estate</u>," <u>id.</u> at 315 (emphasis added).  Therefore, even if the Barnes and Pace deeds were
ambiguous – which they are not – the application of this canon of construction would result in a
holding that they conveyed a fee estate.  <u>Ratcliff</u> also defeats Plaintiffs' argument that the Barnes
and Pace deeds should be construed to convey an easement because the railroad right-of-way has
been used only for railroad purposes, Pls.' Memo. at 17-18.  As the Mississippi Supreme Court
explained in <u>Ratcliff</u>, "'[i]f a fee-simple estate be acquired, it is immaterial that the land so held
in extent and area constitutes the right of way or that it is so used.'"  59 So.2d at 315 (quoting
<u>Kynerd v. Hulen</u>, 5 F.2d 160, 161 (5th Cir. 1925)).

In summary, the Barnes and Pace deeds conveyed a "strip of land" which the railroad was "to have and to hold . . . in fee simple." Because as a matter of Mississippi law this language conveyed a fee simple interest to the railroad, Plaintiffs have no ownership interest in these segments of the right-of-way and thus no basis upon which to assert a taking of the lands within the right-of-way. For this reason, this Court should deny Plaintiffs' motion and grant the United States' cross-motion for any Plaintiff who demonstrates that his or her property abuts a segment of the right-of-way acquired through the Barnes and Pace deeds.

### C.    Seven Plaintiffs Cannot Prove a Fifth Amendment Taking for the Additional Reason that Their Respective Properties Do Not Abut the Railroad Right-of-Way Because a Street Separates Their Properties from the Right-of-Way.

The following seven Plaintiffs allege that they own properties which are separated from the railroad right-of-way by a street: Henderson; Ford; R. Hatchett; H. Hatchett; Hill; C. Parker; and Mobley. Rather than producing deeds or other conveyance documents from their respective chains-of-title to show that they are the fee owners of the lands within the subject right-of-way, Plaintiffs instead invoke the center-line presumption to prove ownership. Their reliance on that legal presumption is misplaced. Plaintiffs could take advantage of a center-line presumption to prove ownership of a portion of the right-of-way only if they owned fee title to the land underlying the entire street; unless the own fee title to the land underlying the entire street, they do not abut the right-of-way. Plaintiffs have not made such a showing, and therefore the claims of these seven Plaintiffs should be rejected for this additional reason.[10]

As reflected in Exhibit I to Plaintiffs' Proposed Findings of Uncontroverted Facts, none of these seven Plaintiffs has a deed reciting the boundary (or the center line) of the railroad right-of-way as part of a metes-and-bounds description of his or her property, or referencing the right-

---

[10] The claims of these seven Plaintiffs should also be rejected for the reasons discussed in Parts V.A and V.B above.

of-way in any respect.  Instead, these Plaintiffs' respective deeds convey one or more lots of the

Match Factory Survey, the Match Factory Addition, or South Vicksburg Enlarged.  See id.

Plaintiffs contend, however, that they own fee title to the boundary of the right-of-way because

"under Mississippi law, a road dedicated by plat is an easement only."  Pls.' Memo. at 12 (citing

Panhandle Oil Co. v. Trigg, 114 So. 625, 626 (Miss. 1927)).

Plaintiffs' reliance on Panhandle Oil Co. is misplaced.  In that case, the Mississippi

Supreme Court held that "[w]hen the appellee platted the land into lots and blocks, with streets

and alleys shown thereon, and sold lots with reference to this plat, this was a dedication of the

streets to the public use; and when he sold lots with reference to this plat, the purchasers acquired

the fee of the abutting streets to the center thereof."  Panhandle Oil Co., 114 So. at 626 (emphasis

added).  In other words, Panhandle Oil Co. would support an argument that the seven Plaintiffs

own fee title underlying the intervening street to its center line rather than fee title to the land

underlying the entire street.  Plaintiffs cite neither Mississippi case law nor anything in the record

showing that they own fee title under the entirety of the intervening street.

Because the seven Plaintiffs (Henderson; Ford; R. Hatchett; H. Hatchett; Hill; C. Parker;

and Mobley) have not demonstrated that they own fee title to the land underlying the entire street

that lies between their respective lots and the railroad right-of-way, they cannot take advantage

of a center-line presumption to show ownership of the railroad right-of-way.[11]

---

[11] Plaintiffs' citation to New Orleans & Northeastern Railroad Co. v. Morrison, 35 So.2d at 71, misses the point.  Pls.' Memo. at 13.  That case would apply a center-line presumption to show ownership of the railroad right-of-way only if Plaintiffs had proved that they own fee title to the property abutting the railroad right-of-way, which Plaintiffs have not done.  (And as discussed in Parts V.A and V.B above, Plaintiffs would also need to prove that their properties abutted segments of the right-of-way in which the railroad held only an easement, which Plaintiffs also have not done.)

**D.    Even if Plaintiffs Could Demonstrate That Their Respective Properties Abut Segments of the Right-of-Way in Which the Railroad Held Only an Easement, Both Railbanking and Interim Trail Use Are Within the Scope of that Easement.**

Even if Plaintiffs could demonstrate that the Barnes and Pace deeds conveyed only an easement rather than fee simple title (and even if the seven Plaintiffs discussed in Part V.C above owned properties abutting the railroad right-of-way), they could not prove a Fifth Amendment taking because the scope of the railroad's easement is sufficiently broad under Mississippi law to encompass both railbanking and interim trail use. The same is true for any segment of the right-of-way acquired by adverse possession, assuming that any Plaintiff had met his or her burden of proving that his or her property abuts such a segment.

The United States is not aware of any Mississippi case specifically addressing whether either railbanking or interim trail use is within the scope of a railroad easement under Mississippi law. Nor do Plaintiffs point to any such case.[12] The United States submits that if presented with the question, Mississippi courts would join those courts that have found, under the laws of other states, that railbanking is a permissible railroad purpose.[13] The cases cited by Plaintiffs do not dictate a contrary conclusion under Mississippi law.

---

[12] Although ideally this question of first impression would be resolved by a Mississippi court, Mississippi Rule of Appellate Procedure 20 does not permit a federal trial court to certify a question of Mississippi law to the Mississippi Supreme Court. Instead, the rule provides, "[w]hen it shall appear to the Supreme Court of the United States or to any United States Court of Appeals that there may be involved in any proceeding before it questions or propositions of law of this state which are determinative of all or part of that cause and there are no clear controlling precedents in the decisions of the Mississippi Supreme Court, the federal court may certify such questions or propositions of law of this state to the Mississippi Supreme Court for rendition of a written opinion concerning such questions or propositions of Mississippi law." Id.

[13] The United States acknowledges, as discussed in Plaintiffs' Memorandum, that courts applying the laws of other states have reached a contrary conclusion. See Pls.' Memo. at 21-26. But none of the cases cited by Plaintiffs applied Mississippi law, which controls here. The United States therefore disagrees with Plaintiffs' assertion that any cases decided under the law of other states is "binding precedent." Id. at 26.

For example, <u>Ryan v. Mississippi Valley & Ship Island Railroad Co.</u>, 62 Miss. 162, 1884 WL 3428 (Miss. 1884), involved the physical boundaries of an easement taken by adverse possession.  The court held that "[t]o the extent of its actual occupation the defendant was protected against the claim of the plaintiffs for damages, but for any damage done by the defendant to the land of the plaintiffs outside of the domain covered by the adverse possession spoken of, they were entitled to recover."  <u>Id.</u> at *3.  Therefore, the railroad was liable for widening the railroad bed and widening and deepening the ditches on its sides within the prescriptive period, even if it could not be held liable for activities for which the prescriptive period had expired.  <u>Id.</u>  Similarly, in <u>Capital Electric Power Ass'n v. Hinson</u>, 84 So.2d 409 (1956), which involved the clearing of a power-line right-of-way beyond that which had existed for many years on the plaintiff's property, the Mississippi Supreme Court noted that "[a]s a general rule, in the absence of contrary statute, the location of an easement when once established cannot be changed by either party without the other's consent except under the authority of a grant or reservation to this effect."  <u>Id.</u> at 412 (internal quotation marks omitted).[14]

Plaintiffs' reliance on these cases, <u>see</u> Pls.' Memo. at 27, is misplaced.  Nothing in the record here indicates that the location or acreage of the right-of-way being railbanked is different than when the right-of-way was used for active rail service.  Indeed, the Trail Use Agreement specifically identifies the property being conveyed as "that portion of [KCSR's] Redwood

---

[14] <u>United States v. Harrison County</u>, 265 F. Supp. 76 (S.D. Miss. 1967), <u>rev'd on other grounds</u>, <u>United States v. Harrison County</u>, 399 F.2d 485 (5th Cir. 1968), which Plaintiffs cite, is another case involving the physical boundaries of an easement.  There, the court noted, "[t]he seawall easement did not specifically describe its boundaries, but it was actually acquired in part by adverse possession and in part by expropriation.  The use of such an easement defines its powers and boundary which may not be changed, unless authorized by the instrument under which it was acquired or by agreement of the parties."  265 F. Supp. at 84.

Branch from Milepost 225.6 to Milepost 229.85 in Warren County, Mississippi, . . ."  Ex. E to

Pls.' Proposed Findings of Uncontroverted Fact at 3.[15]

Furthermore, certain cases on which Plaintiffs rely suggest that the range of permissible

railroad purposes under Mississippi law is not nearly as restrictive as Plaintiffs contend.  For

example, in Weir v. Standard Oil Co., 101 So. 290 (Miss. 1990), a railroad leased a portion of its

depot grounds, in which it held an easement, to Standard Oil to allow it to erect tanks for the

handling and storage of oil.  The lease had a term of five years, but it also required Standard Oil

to return the premises to the railroad upon 90-days' notice.  Id. at 291.  The owners of the

underlying fee sued to recover the land occupied by Standard Oil as well as rents for its use and

occupancy of the property.  Id. at 290-91.  The Mississippi Supreme Court upheld the lower

court's ruling that Standard Oil's use of the railroad easement for storing and handling oil was

within the easement's scope.  In Jones v. City of Hattiesburg, 42 So. 2d 717 (Miss. 1949), the

Mississippi Supreme Court cited Weir for "the principle therein announced that a railroad

company may use its right of way not merely for its track but for any other building or structure

which reasonably tends to facilitate its business."  City of Hattiesburg, 42 So.2d at 719.  The

railroad sought to erect a warehouse, and the court noted that "[t]he construction and operation of

a warehouse cannot be any more objectionable than the vibration of trains with their attendant

noise, vibration, smoke, and dirt, or the switching and placing of railroad cars upon the

property."  Id.

---

[15] City of Womack v. West Point, 174 So. 241 (Miss. 1937), on which Plaintiffs' rely, is also
distinguishable.  In that case, the Mississippi Supreme Court held that the defendant could not
claim an easement by prescription to avoid liability for a substantial increase in the volume of
sewage flowing through a sewer that emptied onto the plaintiff's land.  Id. at 242.  Here, in
contrast, railbanking and interim trail use will result in a decreased volume of rail traffic over the
right-of-way.

Weir shows that under Mississippi law, a railroad may convey an interest in a right-of-way easement for use by a third party, which is what KCSR has done here in entering a trail use agreement with the City of Vicksburg.  And as in Weir, where the third-party was required to vacate the premises upon the railroad's request, the trail use agreement here requires the City of Vicksburg to vacate the right-of-way should KCSR or another railroad wish to offer rail service on the right-of-way in the future.  See Def.'s PFOF ¶ 19; see also Ex. E to Pls.' Proposed Findings of Uncontroverted Fact at 5.  City of Hattiesburg shows that Mississippi courts recognize the burden that the operation of a railroad places on the underlying estate and the abutting property owners, and permit the use of a right-of-way for purposes no more objectionable than such operations that facilitate the railroad's business.  Here, railbanking diminishes the burden imposed by the operation of an active railroad, and it facilitates the railroad's business by preserving the right-of-way for future reactivation.[16]

Because Mississippi courts have not limited railroad easements to use by a railroad for the running of trains, the Mississippi Supreme Court likely would agree with those courts that have found railbanking to be permissible railroad purposes.  Courts in Maryland and Pennsylvania have held that railbanking does not extinguish a railroad's easement.  See Moody v. Allegheny Valley Land Trust, 976 A.2d 484 (Pa. 2009); Chevy Chase Land Co. v. United States, 733 A.2d 1055 (Ct. App. Md. 1999).  In Moody, the Pennsylvania Supreme Court held

---

[16] Plaintiffs' citation of Columbus & Greenville Railway. Co. v. Dunn,  185 So. 583 (Miss. 1939), and City of Canton v. Canton Cotton Warehouse Co., 36 So. 266 (Miss. 1904), for the propositions that a railroad cannot use a railroad easement in a manner foreign to the railroad or inconsistent with the further enjoyment of the easement begs the question that this Court must resolve.  Pls.' Memo. at 27-28.  The United States contends that Mississippi courts would join those courts that have held under the law of other states that railbanking is permissible under a railroad's easement.  Plaintiffs contend that railbanking is not a permissible use of the railroad's easement.  Plaintiffs' citation of Mashburn, 109 So.2d at 536, and Morrison, 35 So.2d at 70, also sheds no light on this question.  As discussed above in Part V.B, those cases address whether a deed to a railroad conveyed fee title or merely an easement.

that railbanking "is a method of rail maintenance and preservation rather than a departure from the intentions and purposes of the easement at the time it was granted."  976 A.2d at 492. Moody reasoned that preservation of the rail corridor through railbanking does not extinguish the railroad easement for the same reason that halting train service for a period of years in order to update track hardware does not extinguish the railroad easement.  Id.  The court also observed that "the fact that hikers and bikers will be allowed to use the easement in the interim period is not only beneficial from a policy perspective, it also allows investment in the upkeep of rail networks-for rail purposes-that would not otherwise be available."  Id.  In Chevy Chase, the Maryland Court of Appeals held that railbanking does not constitute abandonment under state law, because "if abandonment of the state-law property interest occurs when a trail use agreement is being pursued in compliance with federal law, that abandonment would occur without the federal regulatory approval, which . . . could result in civil and criminal liability." 733 A.2d at 1088.

Moreover, even if this Court were to conclude that under Mississippi law interim trail use exceeds the scope of a railroad's easement, it must separately consider whether railbanking also exceeds the easement's scope.  See Schneider v. United States, 2003 WL 25711838, at *7 (D. Neb. Aug. 29, 2003); see also Schneider v. United States,  2008 WL 2953550, at *2-3 (D. Neb. July 29, 2008).  In Schneider, the United States District Court for the District of Nebraska held that interim trail use fell outside the scope of the railroad easements at issue.  2003 WL 25711838, at *4-6.  Like Moody and Chevy Chase, however, Schneider also held that railbanking did not extinguish the underlying railroad easement under Nebraska law.  Schneider, 2003 WL 25711838, at *4-6.  Accordingly, the district court held that a taking occurred and that just compensation for that taking would be measured by the marginal value of trail use on a

servient estate that is otherwise subject to the railroad's easement.  Id. at *7.  Thus, if this Court

holds that trail use exceeds the scope of a railroad's easement under Mississippi law, the United

States is liable only for the marginal just compensation due for the "new" easement (i.e., the

additional burden imposed on the servient estate for trail use above the existing easement for

railroad purposes).[17]

---

[17] Cases cited by Plaintiffs at pages 28 and 29 suggest that Mississippi might similarly look to the
new burden imposed on an existing easement in determining compensation.  In Stowers v. Postal
Telegraph-Cable Co., 9 So. 356 (Miss. 1891), the court noted that the weight of authorities was
that "telegraph lines form no part of the equipment of a public street, but are foreign to its use,
and that where the abutting owner is the owner of the fee to the center of the street he is entitled
to additional compensation for the additional burden placed upon his land."  Id. at 356.  In Berry
v. Southern Pine Electric  Power Ass'n, 76 So.2d 212 (Miss. 1954), the court noted that "[i]t is
quite generally conceded that electric light and power lines in a public street or highway, so
placed for the commercial purpose of furnishing electric current to private individuals or
concerns constitute an additional burden or easement for which the owner of the abutting
property, who also owns the fee in the street or highway, is entitled to compensation," id. at 217-
18 (internal quotation marks omitted), and remanded for a trial on actual damages resulting from
the installation of electric poles and lines.

## VI.    CONCLUSION

For the reasons discussed above, the United States respectfully requests that this Court deny Plaintiffs' motion for partial summary judgment on liability and grant the United States' cross-motion for summary judgment.

Respectfully submitted,

IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division

 /s/ Joshua A. Doan
JOSHUA A. DOAN
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O Box 663
Washington, DC 20044-0663
Tel: (202) 305-0874
Fax: (202) 305-0506
Email: joshua.doan@usdoj.gov

Counsel for Defendant

December 6, 2010